In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00194-CV
_____

IN RE COMMITMENT OF EDWARDO RATLIFF GARCIA

**On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 11-07-08060 CV**

**MEMORANDUM OPINION**

Edwardo Ratliff Garcia appeals from his civil commitment as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2013). In six issues, he claims (1) the evidence is legally insufficient to support the jury's verdict, (2) the trial court impaired his ability to obtain an impartial jury by limiting his attorney's opportunity to question the members of the venire about potential biases against pedophiles, (3) the State, in final argument, misstated the question the jury was asked to decide, (4) the trial court erred by

1

admitting testimony from one expert that informed the jurors about the opinions of other experts who did not testify during trial, (5) the trial court did not have subject matter jurisdiction over his case, and (6) the sexually violent predator statute is unconstitutional based on the Texas Supreme Court's interpretation of the statute in *In re Commitment of Bohannan*, 388 S.W.3d 296 (Tex. 2012). Finding no reversible error, we affirm the judgment.

## The Statute

In an SVP case, the State is required to prove, beyond a reasonable doubt, that the defendant is a sexually violent predator. *See* Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). A person is a "sexually violent predator" subject to commitment if the person: "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id*. § 841.003(a) (West Supp. 2013). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. § 841.002(2) (West Supp. 2013).

2

## Legal Sufficiency

In issue four, Garcia argues that the evidence is legally insufficient to demonstrate that he has serious difficulty in controlling his behavior. *See Kansas v. Crane*, 534 U.S. 407, 413 (2002). Garcia's argument focuses on whether the evidence admitted in his trial is legally sufficient to show that he is anything more than an ordinary recidivist.

The United States Supreme Court has explained that the inability of a sexually violent predator to control his behavior "must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Id.* Our court has explained: "A finding that a person suffers from an emotional or volitional defect so grave as to predispose him to threaten the health and safety of others with acts of sexual violence entails a determination that he has 'serious difficulty in controlling behavior.'" *In re Commitment of Almaguer*, 117 S.W.3d 500, 505 (Tex. App.—Beaumont 2003, pet. denied) (quoting *In re Commitment of Browning*, 113 S.W.3d 851, 863 (Tex. App.—Austin 2003, pet. denied)). Thus, for the evidence in an SVP case to be legally sufficient, the State is required to introduce evidence sufficient to

show that the person it seeks to commit has serious difficulty in controlling his behavior.

With respect to Garcia's legal sufficiency issue, "we use the appellate standard of review applied in criminal cases for legal sufficiency of the evidence." *In re Commitment of Barbee*, 192 S.W.3d 835, 839 (Tex. App.—Beaumont 2006, no pet.). For legal sufficiency, we review all of the evidence in the light most favorable to the jury's verdict. *See id*.

The State sought to establish that Garcia has serious difficulty in controlling his behavior through the testimony of experts. Garcia argues that Dr. McGarrahan, a forensic psychologist, did not consider whether Garcia has serious difficulty in controlling his behavior, but only considered his "recidivism and risk." Dr. McGarrahan's testimony indicates that she did consider a lack of behavioral control, as she explained that the proof that Garcia has serious difficulty in controlling his behavior "is included and inherent in the risk assessments that [are done] in these types of cases."

Garcia also argues that the testimony of Dr. Self, a psychiatrist, fails to establish that Garcia suffers from serious difficulty in controlling his behavior. In his brief, Garcia points to Dr. Self's explanation of the term "volitional capacity."

4

Dr. Self testified that the term "basically means you can use it almost interchangeably with will. It means that you designate a goal or a set of standards, and then you do what's necessary to conform your behavior to those standards." Dr. Self's explanation, however, should not be considered in isolation, as it is viewed in the context of Garcia's history of repeated sexual offenses, as well as in the context of Dr. Self's diagnosis of Garcia's mental condition.

Garcia also contends that Dr. Self's reliance on the fact that he committed new sexual offenses after being incarcerated is not any evidence that he has serious difficulty controlling his behavior. According to Garcia, if the fact that a person has repeatedly committed sexually violent offenses is considered as evidence of a person's having serious difficulty in controlling his behavior, *Crane*'s distinction between the "dangerous but typical recidivist" and those who qualify as SVPs would be eviscerated. *See Crane*, 534 U.S. at 413. But, in a legal sufficiency review, we do not view various pieces of evidence separately; instead, we review the record as a whole.

The three testifying experts, two psychologists and one psychiatrist, provided the jury with the majority of the testimony that addressed the difficulty Garcia has in controlling his behavior. Both of the State's experts, Dr. McGarrahan

5

and Dr. Self, concluded that Garcia has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Fabian, the psychologist Garcia called to testify for the defense, concluded that Garcia does not have a behavioral abnormality in light of Garcia's age (sixty-five), his lack of substance abuse issues, his lack of the full panoply of risk factors for antisocial personality disorder and psychopathy, and his score on an actuarial risk assessment tool, the Static-99R.

Essentially, Garcia's case was a battle of expert witnesses. The opinions of the State's experts that Garcia is a sexually violent predator who is likely to reoffend are in evidence, and the admissibility of the testimonies of the State's psychiatrist and psychologist are not challenged on appeal. The State's experts reached their conclusions after reviewing various records pertinent to the case and after interviewing Garcia. After carefully reviewing all of the evidence admitted in Garcia's trial, we conclude the jury could reasonably infer from the testimony that Garcia has serious difficulty in controlling his behavior and that it was reasonable on this record for the jury to disregard Dr. Fabian's testimony to the contrary. *See In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied). We hold there is legally sufficient evidence to support the jury's

6

conclusion that Garcia has serious difficulty controlling his behavior, and that he is a sexually violent predator. We overrule issue four.

## Voir Dire

In issue one, Garcia contends that the trial court erred by "prohibiting [his trial counsel] from asking a proper question on voir dire about the veniremembers' biases or prejudices against pedophiles." The record reflects that before voir dire commenced, the trial judge instructed the attorneys, outside the presence of the venire, not to use the word pedophile or "child rapist" during the questioning of the venire. Additionally, the trial judge advised the attorneys that he would ask the venire about any prejudice or bias that any prospective juror might have toward persons who were guilty of committing sexual offenses, and if anyone indicated having a bias, "we'll take it up back in the jury room." None of the attorneys objected to following the procedure the trial court suggested for handling voir dire.

Before the attorneys questioned the venire, the trial judge asked the venire a general question about whether the members of the venire could set aside any biases and prejudices about Garcia's prior convictions for sexual offenses. After several jurors responded, the trial court then asked whether anyone on the venire felt he or she could not be fair if any specific types of sexual offenses were

7

admitted into evidence during the trial. When several other jurors responded, the trial court stated: "This doesn't get you out of it, but we may have to go back and talk to you privately." After the attorneys finished questioning the array, the trial court allowed the attorneys to question several veniremembers about pedophilia outside the presence of the other potential jurors.

"Litigants have the right to question potential jurors to discover biases and to properly use peremptory challenges. *In re Commitment of Hill*, 334 S.W.3d 226, 228 (Tex. 2011) (citing *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 749-50 (Tex. 2006)). Questioning a potential juror in an SVP case about bias toward pedophiles is a proper line of questioning. *See In re Commitment of Kalati*, 370 S.W.3d 435, 441 (Tex. App.—Beaumont 2012, pet. denied). To preserve a complaint that the trial judge improperly restricted voir dire, the complaining party must present a "timely request that makes clear—by words or context—the grounds for the request and by obtaining a ruling on that request, whether express or implicit." *Hill*, 334 S.W.3d at 229 (citing Tex. R. App. P. 33.1). In *Hill*, the Texas Supreme Court found that Hill's counsel preserved his complaint regarding the trial court's limitation of voir dire. *Id*. The attorney asked proper questions to the potential jurors regarding whether the jurors were biased against homosexuals,

8

and the Court made it clear why the attorney was entitled to ask the potential jurors that type of question. *See id.* at 228-29. The Court held that the trial court erred by ordering counsel to terminate that line of questions and to "'move on' without asking any further questions on the topic." *Id*. at 229. There was no need in *Hill* for counsel to rephrase the questions, because, as the Court explained, there were "no defects for him to cure." *Id*.

This case is distinguishable from *Hill*. Here, Garcia's counsel did not object during the pretrial conference to the trial court's instruction to the attorneys to not use the terms "pedophile" or "child rapist" during the general voir dire, and counsel did not present any voir dire questions on that subject for the trial court's consideration. Further, trial counsel did not object to the manner the voir dire was conducted, and counsel waited, as the trial judge had instructed, until some of the members of the venire were questioned privately about possible bias toward pedophiles. Garcia first challenged the court's procedure regarding voir dire in his motion for new trial. Because the trial court might have chosen to follow some other procedure had anyone objected during the trial, Garcia's delay in raising his complaint about the manner the trial court conducted voir dire makes it untimely. *See* Tex. R. App. P. 33.1(a). Rule 33.1 is intended to allow the trial court an

opportunity to rule on matters at a time that the party's complaint can be remedied. *See Odom v. Clark*, 215 S.W.3d 571, 574-75 (Tex. App.—Tyler 2007, pet. denied); *Credille v. State*, 925 S.W.2d 112, 115-16 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).

We express no opinion about whether the method the trial court chose to employ during voir dire allows counsel an adequate opportunity to question the venire on issues such as pedophilia. *See generally* Tex. R. App. P. 33.1(a); *Webb v. State*, 232 S.W.3d 109, 112-13 (Tex. Crim. App. 2007); *In re Commitment of Alexander*, No. 09-11-00650-CV, 2013 WL 5425557, at \*\*1-4 (Tex. App.—Beaumont Sept. 26, 2013, no pet. h.). Nonetheless, the record shows the trial court allowed individual jurors to be questioned on the subject of pedophilia outside the presence of the venire, and Garcia did not object to the procedure the trial court requested the attorneys to follow. We overrule issue one.

## Closing Argument

In issue two, Garcia contends the trial court erred by "allowing the State to argue during closing argument that the question in this case is whether Mr. Garcia should be around children." Garcia contends the State's comment was a "serious misstatement of the law," and the comment was harmful.

10

During argument, attorneys may argue the facts of the case to the jury, draw legitimate inferences, deductions, and conclusions from the evidence, discuss the reasonableness of the evidence and its probative effect, and reply to the argument of the opposing party. *Zurita v. Lombana*, 322 S.W.3d 463, 482-83 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *Dyer v. Hardin*, 323 S.W.2d 119, 127 (Tex. App.—Amarillo 1959, writ ref'd n.r.e.); *see also* Tex. R. Civ. P. 269(b), (e). To obtain a reversal based on improper jury argument, an appellant must show an error that (1) was not invited or provoked, (2) was preserved by the proper trial predicate, (3) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the trial court, and (4) by its nature, degree, and extent, constituted reversibly harmful error. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex. 1979); *In re Commitment of Ramirez*, No. 09-13-00176-CV, 2013 WL 5658597, at *6 (Tex. App.—Beaumont Oct. 17, 2013, no pet. h.) (mem. op.).

In her closing argument, the State's attorney discussed the elements the State was required to prove to show that Garcia is a sexually violent predator. She repeatedly stated the various elements that are required for such a finding. She also explained that the definition of "behavioral abnormality" in the charge included

11

language allowing the jury to consider whether the person has become "a menace to the health and safety of another person[,]" and based on that language, she argued that the safety of the community should be considered. In reviewing the evidence for the jury, the State's attorney discussed the testimony of the three expert witnesses, each of whom had diagnosed Garcia with pedophilia, "a chronic condition" involving a "sexual attraction to children." Commenting on Dr. Fabian's testimony concerning his interview of Garcia, the State's attorney pointed to the fact that Garcia stated during that interview that he fantasizes about children who are thirteen-to-fifteen years old.

In response to defense counsel's comment that the risk of reoffending with a sexual offense generally declines with age, the State argued to the jury that the characteristics of the individual, not just the individual's age, must be considered. The State's attorney continued her argument as follows:

> [STATE'S ATTORNEY]: And then you want to take this age issue and take it out of context and apply it to Mr. Garcia, we can look over the years and see that Mr. Garcia has never lined up on that line that goes down. He's never lined up on that line. When he was supposed to be at 2.5 percent risk of recidivism, he was sexually assaulting kids. . . . Mr. Garcia's risk, and that's who we're here for, his risk has not decreased with age. And Dr. Fabian places too much emphasis on that.
> He also talked about low risk. Here's the deal. I think sometimes in these cases the risk of hearing this evidence is that it

12

gets reduced to an academic debate. The word "low," and the doctors want to talk about what this says and what that says, but here's -- you got to put your money where your mouth is. What it all boils down to is should Mr. Garcia be around children?

[DEFENSE COUNSEL]: Objection, Your Honor. She's improperly framing the question. It's improper closing argument.

[STATE'S ATTORNEY]: I'm talking about just the low risk issue.

THE COURT: Overruled. It's argument.

The State's attorney's remark concerns the risk that Garcia would reoffend with children, the persons whom Garcia had historically targeted when he committed his offenses. In part, the State's comment responds to the argument that the risk that Garcia will reoffend against children is low because of Garcia's age. Given the context in which the argument occurred, Garcia's counsel invited the State's response. Because the response was invited, there is no reversible error regarding the argument at issue. *See Reese*, 584 S.W.2d at 839. We overrule issue two.

## Opinions of Non-Testifying Experts

In issue three, Garcia argues the trial court erred by allowing the State's expert to testify about the opinions of non-testifying experts. The testimony to which Garcia objects was introduced by the State through Dr. McGarrahan. During the State's direct examination, Dr. McGarrahan explained that she reviewed and relied upon reports performed by other psychologists (Dr. Murray and Dr.

13

Gilhousen) who, though having evaluated Garcia, did not testify at trial. Garcia objected, under Rules 705(d) and 403 of the Texas Rules of Evidence, to Dr. McGarrahan's disclosing the opinions of these experts. *See* Tex. R. Evid. 403, 705(d).

Rule 705 of the Texas Rules of Evidence permits a trial court to admit the underlying facts or data on which an expert has based an opinion. *See* Tex. R. Evid. 705(a); *In re Commitment of Camarillo*, No. 09-12-00304-CV, 2013 WL 2732662, at \*\*3-4 (Tex. App.—Beaumont June 13, 2013, no pet.) (mem. op.). Rule 705(d) provides that if otherwise inadmissible evidence relied on by an expert is disclosed to the jury, the court must, upon request, give the jury a limiting instruction. Tex. R. Evid. 705(d). The trial judge gave the following limiting instruction multiple times during the course of trial: "[C]ertain hearsay information contained in records reviewed by experts, they are allowed into evidence through expert testimony. Such testimony is admitted only for showing the basis of their opinion, and you are allowed to consider it for the basis of the witness's opinion." The trial court included a similar written instruction in the jury charge.

Trial courts may choose to allow otherwise inadmissible information to be disclosed to the jury by experts when the expert has used the information to form

an opinion, and the jury is given a limiting instruction that explains the purpose for which the otherwise inadmissible information is being disclosed. *See* Tex. R. Evid. 705; *In re Commitment of McCarty*, No. 09-12-00083-CV, 2013 WL 3354556, at *3 (Tex. App.—Beaumont June 27, 2013, pet. denied) (mem. op.). When a limiting instruction is given, we presume the trial court's instruction was followed. *See In re Commitment of Day*, 342 S.W.3d 193, 198-99 (Tex. App.—Beaumont 2011, pet. denied).

We conclude the trial court did not abuse its discretion by allowing Drs. McGarrahan and Self to testify about the non-testifying experts' opinions, as these were matters the evidence shows were reviewed by these experts to form opinions. We conclude that the admission of the testimony at issue was not an abuse of discretion, and that the limiting instructions given in connection with this same testimony further reduced any possibility that Garcia was prejudiced by the testimony. *See id.* at 197-99. In light of the jury instructions, the trial court could reasonably conclude that the probative value of the testimony outweighed its capacity to prejudice the jury. We overrule issue three.

## Jurisdiction

In issue five, Garcia contends the trial court did not have subject matter jurisdiction over his case because he had not yet been released or been given an anticipated release date when the petition to commit him as a sexually violent predator was filed. We rejected similar arguments in *In re Commitment of Evers*, No. 09-11-00430-CV, 2012 WL 6213508, at **1-5 (Tex. App.—Beaumont Dec. 13, 2012, pet. denied) (op. on reh'g), and *In re Commitment of Robertson*, No. 09-09-00307-CV, 2010 WL 3518509, at **12-13 (Tex. App.—Beaumont Sept. 9, 2010, pet. denied) (mem. op.). Based on our holding in those cases, we overrule issue five.

## Constitutionality of Statute

In issue six, Garcia argues the Texas Supreme Court's recent construction of the SVP civil commitment statute in *Bohannan* renders the statute facially unconstitutional under the Fourteenth Amendment's due process clause. *See Bohannan*, 388 S.W.3d at 302-03. We rejected the same argument in *In re Commitment of Anderson*, 392 S.W.3d 878, 886 (Tex. App.—Beaumont 2013, pet. denied). For the same reasons that we gave in *Anderson*, we overrule issue six.

Having overruled all of Garcia's issues, we affirm the judgment.

AFFIRMED.

               _____

                     HOLLIS HORTON
                       Justice

Submitted on November 8, 2013
Opinion Delivered December 12, 2013

Before McKeithen, C.J., Kreger, and Horton, JJ.