CONDRA FUNERAL HOME V. MARY ROLLIN, ET VIR.

No. A-6739. Decided June 4, 1958.
(314 S.W. 2d Series 277)

*Hart, Brown, Sparks & Erwin, Jay H. Brown, Frank C. Erwin, Jr.,* and *James P. Hart,* all of Austin, for petitioner.

The Court of Civil Appeals committed error in holding that any error relating to counsel's inquiries about the police officer giving Shivers a ticket for failing to yield the right of way was not waived by respondents, and said court erred in holding that Counsel's inquiries regarding said ticket constituted reversible error, under Rule 434 T.R.C.P. Ford v. Carpenter, 147 Texas 447, 216 S.W. 2d 558; Goforth v. Alvey, 153 Texas 449, 271 S.W. 2d 404; Aultman v. Dallas Ry. & Term. Co., 152 Texas 509, 260 S.W. 2d 596.

MR. JUSTICE CALVERT delivered the opinion of the Court.

In this suit by Mary Rollin and John Rollin for damages for personal injuries to themselves and to their minor daughter, now deceased, growing out of an automobile collision at a street intersection in the City of Austin, the Court of Civil Appeals has reversed a trial court judgment based on a jury verdict in favor of the defendant, Condra Funeral Home, petitioner here. Reversal was ordered because of misconduct of counsel for defendant, which misconduct the Court of Civil Appeals held was calculated to cause and probably did cause the rendition of an improper judgment. 309 S.W. 2d 940.

The plaintiffs and their ill daughter were being transported to an Austin hospital in the defendant's ambulance when it collided with an automobile driven by Lee Shivers. Plaintiffs pleaded that certain acts of negligence on the part of the ambulance driver were proximate causes of the collision. Defendant pleaded that negligence of the driver of the automobile was the sole proximate cause of the collision and that the collision was an unavoidable accident.

The misconduct on which reversal was predicated occurred during cross-examination by defendant's counsel of the witness

Schulle, a city policeman, called to testify by the plaintiffs, and is found in the following transcript of the proceedings:

"Q.   And I believe you gave him [driver of the Shivers' car] a ticket for failing to yield the right of way to the ambulance?

"MR. DAVIS: Your Honor, I would like to object to that and ask that the jury be instructed that they should not consider any opinion he may have had as to the fault in this accident, and anything of that character is improper and I think Mr. Brown knows it.

"THE COURT: Ladies and gentlemen of the jury, you will not consider the question and answer as to whether or not the driver of the Dodge was given a ticket, for any purpose in this case.

"MR. BROWN: Did I understand the Court instructed the jury not to consider the fact that he gave a ticket for failing to yield the right of way?

"THE COURT: I instructed them not to consider the question or the answer as to the ticket for any purpose in this case."

Petitioner contends that the Court of Civil Appeals' judgment of reversal is erroneous for two reasons: (1). In failing to ask for a mistrial at the time the misconduct occurred plaintiffs waived their right to complain of it. (2). The misconduct was not, in any event, of such a prejudicial nature as was reasonably calculated to cause and probably did cause the rendition of an improper judgment.

In contending that by failing to move for a mistrial plaintiffs waived their right to complain of the improper question propounded to the witness and the improper statement made to the court in the presence of the jury, defendant relies on Ford v. Carpenter, 147 Texas 447, 216 S.W. 2d 558.

Ford v. Carpenter was a suit for damages for personal injuries. During cross-examination of the plaintiff, defendant's counsel asked if he carried an insurance policy. Plaintiff's counsel's objection to the question was sustained, but there was no motion for a mistrial. The opinion of this Court reflects that a mistrial would have been ordered by the trial judge had it been sought. This Court recognized that "ordinarily" conduct

before a jury in the trial of a case indicating the existence or non-existence of protective insurance is improper and that it is calculated to prejudice the rights of one or the other of the parties. 147 Texas 450, 216 S.W. 2d 559. It was definitely held, however, that the right of the party prejudiced to complain was lost or waived by failure to seek a mistrial. 147 Texas 452, 216 S.W. 2d 560.

The Court of Civil Appeals declined to apply the rule laid down in Ford v. Carpenter to the facts of this case. It stated that the rule of that case should be applied only in cases in which the existence or non-existence of protective insurance is brought to the attention of the jury by the conduct of which complaint is made.

We can conceive of no sound basis for the distinction made by the Court of Civil Appeals. On the other hand, we decline to apply the rule of Ford v. Carpenter in this case for reasons now to be stated.

The rule of Ford v. Carpenter was adopted by this Court in spite of a strong argument that it would give a defendant in a damage suit the unconscionable advantage of forcing a plaintiff, through deliberate misconduct, into a mistrial, thereby preventing him from securing a final trial of his case. It was adopted, as indeed the opinion makes clear, because it had been held by certain Courts of Civil Appeals that a defendant could not obtain a reversal of an adverse judgment because of misconduct of plaintiff's counsel unless a motion for mistrial was made. The cases cited in which it had been so held were Harrison-Wright Co. v. Budd, 67 S.W. 2d 670, writ dismissed; Russell v. Adams, 18 S.W. 2d 189, no writ history, and Moore v. Norman, 137 S.W. 2d 833, writ dismissed, judgment correct. See 147 Texas 450, 216 S.W. 2d 560. The court pointed out that it would be unjust and would lead to unnecessary complications to apply the rule of waiver to defendants while refusing to apply it to plaintiffs, and said 147 Texas 452, 216 S.W. 2d 560-561:

"Furthermore, the impartial application of the rule will eliminate the anomalous situation that would arise by allowing a trial to proceed to a judgment that will be allowed to stand only if it is favorable to one of the parties, and where it is certain that a new trial must be ordered if the other party wins. To compel a trial to proceed under such a hazardous and uncertain outcome would be trifling with the authority and dignity

of the court, and would be far more grievous than any inconvenience or harm the plaintiff might suffer by being subjected to the same penalties of waiver which are applied to the defendant under similar circumstances."

It will be noted that the cases cited in which it was held that a defendant waived his right to complain of misconduct of counsel unless he moved for a mistrial were all decided before the adoption in 1941 of the Texas Rules of Civil Procedure. In Ford v. Carpenter this Court assumed the soundness of those decisions and did not examine into that question. Assuming them to be sound, an impartial administration of justice between plaintiffs and defendants undoubtedly compelled the application to plaintiffs of the rule of waiver applied to defendants in those cases, and this Court so held. On the other hand, had they been examined and found unsound there would have been no basis for application of the rule of waiver to plaintiffs. Cases decided by this Court since Ford v. Carpenter, called to our attention by plaintiffs, seem now to justify and to require their examination.

■ Under Rules 434 and 503, Texas Rules of Civil Procedure, appellate courts are directed not to reverse a trial court judgment for errors of law committed during the course of the trial of a case unless the error complained of "amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." In enforcing those Rules we have held with respect to many and various types of errors that a reversal may be ordered only when a review of "the whole record" convinces the reviewing court that but for the error a different verdict or judgment would *probably* have been rendered. Texas Power & Light Co. v. Hering, 148 Texas 350, 224 S.W. 2d 191; City of Galveston v. Hill, 151 Texas 139, 246 S.W. 2d 860; Dallas Ry. & Term. Co. v. Bailey, 151 Texas 359, 250 S.W. 2d 379; Aultman v. Dallas Ry. & Term. Co., 152 Texas 509, 260 S.W. 2d 596; Lumbermen's Lloyds v. Loper, 153 Texas 404, 269 S.W. 2d 367. Now, surely no party should be required to seek a mistrial because of an error committed against him at a time when the "whole record" has not yet been made and it is therefore impossible for either him or the trial court to know whether it will finally appear that it probably caused an improper judgment. It should be enough to preserve the question for counsel to object to improper conduct and for the court to give an instruction to the jury, in language as strong as the nature of the misconduct requires, not to consider it for any purpose or let it affect the verdict.

As heretofore noted, Rules 434 and 503 were not in existence when Harrison-Wright Co. v. Budd, supra; Russell v. Adams, supra, and Moore v Norman, supra, were decided. Under the rule of presumed prejudice then prevailing all errors of law of the type involved were presumed to be so prejudicial as to require a new trial, and there was then much stronger reason for requiring a party who expected later to seek a new trial because of an error deemed prejudicial to seek mistrial at the time and thus avoid riding out of the error until verdict had been returned.

■ In other fact situations in cases more recent than Ford v. Carpenter we have not required a motion for mistrial as a prerequisite to review of error or as a prerequisite to reversal because of its prejudicial character. Texas Emp. Ins. Ass'n. v. Haywood, 153 Texas 242, 266 S.W. 2d 856 (improper argument) ; Houseman v. De Cuir, 155 Texas 127, 283 S.W. 2d 732 (improper argument) ; Pittman v. Baladez, 158 Texas, 372, 312 S.W. 2d 210 (inadmissible evidence) ; Southern Pacific Co. v. Hubard, 156 Texas 525, 297 S.W. 2d. 120 (improper argument). There is no more basis for requiring a motion for mistrial as a prerequisite to review of the error assigned in this case than there was in the cases cited. Accordingly, we conclude that the rule of waiver applied to defendants in Harrison-Wright Co. v. Budd, Russell v. Adams, and Moore v. Norman, has been nullified by Rules 434 and 503. Those Rules and an impartial administration of justice now require that it no longer be applied to plaintiffs.

Our courts have often held that the type of question asked of the witness and repeated to the judge in this case is improper for any purpose. Missouri K. & T. R. Co. of Texas v. Creason, 101 Texas 335, 107 S.W. 527; Quesada v. Graham Ice Cream Co., Texas Civ. App., 207 S.W. 2d 120, no writ history; Sherwood v. Murray, Texas Civ. App., 233 S.W. 2d 879, no writ history; Mooneyhan v. Benedict, Texas Civ. App., 284 S.W. 2d 741, writ refused, n.r.e.

What has been said with respect to the necessity of a motion for mistrial in preserving error is not to be taken as a limitation on the power of trial judges to order mistrials wherever and whenever in their opinion a prejudicial occurrence during trial justifies or requires it.

We do not agree with the conclusion of the Court of Civil Appeals that the improper conduct of counsel for the defendant probably caused the rendition of an improper judgment. Our

conclusion is to the contrary. And our conclusion demonstrates *per se* the inherent fallacy of the rule of waiver applied in Ford v. Carpenter and the cases there cited when considered in connection with the provisions of Rules 434 and 503. Had a motion for mistrial been made by the plaintiffs it might well have been granted by the trial judge at that stage of the proceedings, while on review of the whole record of the trial as completed we are not convinced that the misconduct justifies a setting aside of the jury's verdict. If it had been made and overruled it would have been but an empty and useless gesture.

Much of the testimony bearing on the special issues submitted to the jury is set out in the opinion of the Court of Civil Appeals and it need not be repeated here.

Liability of the defendant was by the issues submitted made to rest on a finding that the driver of the ambulance failed to keep a proper lookout, or was driving at a speed in excess of 30 miles per hour, or failed to slow down as necessary for safety as he approached the intersection, or failed to proceed with caution after he slowed down for the red light at the intersection. All of the liability issues were answered favorably to the defendant and against the plaintiffs. To an issue inquiring whether the failure of Shivers to yield the right of way was the sole proximate cause of the collision, the jury answered that it was not. It found in answer to an issue submitting the question that the collision was the result of an unavoidable accident.

■ To say that the conduct of counsel probably caused the rendition of an improper judgment we would first be compelled to conclude from a review of the record that but for that conduct the jury would *probably* have answered the issues in such fashion as to impose liability on the defendant. It is not enough to say that the jury might *possibly* have done so. Aultman v. Dallas Ry. & Term. Co., 152 Texas 509, 260 S.W. 2d 596, 600.

We may concede that from the improper question and statement of counsel the jury probably inferred that a ticket was given to Shivers and that it was therefore the opinion of the officer that Shivers was under a duty to do so but had failed to yield the right of way. But it would be pure speculation to say that from the question and statement the jury also drew the further inference that the officer did not give the driver of the ambulance a ticket, and then drew the more remote inferences that because he was not given a ticket it followed that the driver of the ambulance did not fail to keep a proper lookout,

was not driving at a speed in excess of 30 miles per hour, did not fail to slow down for the intersection, and did not fail to proceed with caution after slowing down.

■ Presumptively, at least, traffic tickets are only given for violation of penal ordinances or statutes and not for the purpose of establishing fault in civil litigation. If it had been established that tickets were given to both or neither of the parties to the collision, it would still have been the duty of the jury to answer separately each issue from a preponderance of the evidence. The charge of the court gave no indication that any of the liability issues submitted involved offenses for which traffic tickets should have been given by the officer if the defendant's driver had been violating a statute or ordinance. And if we may say that the jury knew from the reading of the plaintiffs' petition that speed in excess of 30 miles per hour, the failure to slow down as necessary for safety, and the failure to proceed with caution after slowing down all involved statutory and ordinance violations for which the officer in the performance of his duty would have given a ticket if defendant's driver had been guilty, how do we account for the fact that the jury also found that the driver did not fail to keep a proper lookout?

If the theory of the plaintiffs be that the improper conduct of counsel was so prejudicial that it probably caused the jury to set aside all of the evidence and make deliberate findings in the defendant's favor on all issues submitted to them, how can we then account for the finding that the failure of Shivers to yield the right of way was not the sole proximate cause of the collision?

In determining whether the misconduct was so highly prejudicial as probably to cause the jury to ignore all evidence and find a verdict relieving the defendant of liability, we must also give proper weight to the instructions by the court. Answers to issues were, as is customary, predicated upon a "preponderance of the evidence." The written charge to the jurors contained a specific instruction that they were not to be concerned with the effect of their answers on the rights of the parties or the judgment to be rendered on the verdict, which were said to be "matters for the court exclusively." Moreover, when the improper question was asked and objection was made the trial judge did not limit himself to the simple observation "objection sustained", but in forceful language instructed the jury that the question was not to be considered "for any purpose

in the case." And then when counsel directed his offending question to the court, the court replied emphatically that he had instructed the jurors "not to consider the question or the answer as to the ticket for any purpose in the case." Considering all of the circumstances surrounding the asking of the questions, we are not prepared to assume or presume that the jurors disobeyed the specific and positive oral instruction and in spite of it did draw an improper inference from the question asked, and then disobeyed the written instruction and used the improper inference as a basis for deciding to answer the issues in such fashion as to make certain that a judgment for the defendant would ensue. Gillette Motor Transp. Co. v. Whitfield, 145 Texas 571, 200 S.W. 2d 624, 626.

Examination of the whole record does not convince us that the conduct of counsel probably resulted in an improper judgment. Squarely in point except that the matter of giving a traffic ticket was injected during argument rather than during cross-examination of a witness is Goforth v. Alvey, 153 Texas 449, 271 S.W. 2d 404.

■ Plaintiffs had before the Court of Civil Appeals a point of error asserting that the jury's answers to the issues were so contrary to the great weight and preponderance of the evidence as to be clearly wrong. The question presented by the point is within the exclusive jurisdiction of the Court of Civil Appeals, Art. V, sec. 6, Constitution of Texas; Electric Express & Baggage Co. v. Ablon, 110 Texas 235, 218 S.W. 1030, 1034, and that court specifically reserved the question for further consideration. The cause must therefore be remanded to the Court of Civil Appeals for further consideration of the point.

The judgment of the Court of Civil Appeals is reversed and the cause is remanded to that court for further consideration.

Opinion delivered June 4, 1958.