**ANGELINA CASUALTY COMPANY,**
Appellant,

v.

**Tommie R. HOLT, Appellee.**

No. 3928.

Court of Civil Appeals of Texas.

Waco.

Nov. 9, 1961.

Rehearing Denied Nov. 30, 1961.

Garrison, Renfrow, Zeleskey, Cornelius, & Rogers, Lufkin, for appellant.

Fulmer, Fairchild & Badders, Nacog-doches, for appellee.

TIREY, Justice.

This is a compensation case. The verdict of the jury was favorable to the employee. The judgment states in effect that upon the pleadings, the evidence and the stipulations of the parties and the verdict of the jury that the employee is entitled to recover the sum of $3,605.17, which represents installments of compensation accrued and unpaid through September 16, 1960, with interest thereon to that time, and further found that plaintiff recover the sum of $125.00 each week beginning with the week ending September 23, 1960, for five consecutive weeks, and the sum of $69.47 for the 6th week, and further found that each installment shall bear interest at the rate of 4% per annum, compounded annually, from the dates of the respective amounts decreed become due and payable until they have been paid, and decreed accordingly. The judgment further provided that the sum of ¼th awarded to the employee be paid to his attorneys. The judgment further vacated the award of the Industrial Accident Board of the State of Texas made on February 19, 1959, relating to the claim styled: Tommie R. Holt, employee, v. Brown & Root, Inc., employer, and Angelina Casualty Company, Insuror.

The judgment is assailed on 14 Points. Points 1 to 5 inclusive, are to the effect that the Court erred in rendering judgment for the employee because: (1 and 2) There is no evidence of probative force that plaintiff worked substantially the whole of the year preceding the alleged injury, and that the evidence is insufficient to support such facts; (3 and 4) That there is no evidence of probative effect to support the jury's findings that another employee worked substantially the whole of the year preceding the alleged injuries, and the evidence is insufficient to support such findings; (5) That plaintiff failed to discharge his burden of proof and obtain findings from the jury that neither plaintiff nor another employee worked substantially the whole of the year preceding the alleged injuries; that plaintiff was not entitled to a recovery based upon the answer of the jury to Issue 18, as to an average weekly wage, which would be fair and just. We are in complete accord with the appellant's contention that there is no evidence of probative force that plaintiff worked substantially the whole of the year preceding the alleged injury, and likewise, that there is no evidence of probative force to support the jury's findings that another employee worked substantially the whole of the year preceding the alleged injuries, and it necessarily follows that the evidence is insufficient to sustain the jury's findings

in this behalf. The testimony is undisputed that plaintiff had worked as a welder for Brown & Root almost exclusively from 1951 until his injuries in October 1958; that his work carried him from place to place; that the pay scale ranged from $2.75 to $4.50 per hour, depending on the area that they were in; that they worked ordinarily 5 days per week, 9 hours per day at $2.75 per hour, with time and a half overtime hours over 40; that during the year immediately preceding his injuries plaintiff worked for no one except Brown & Root; that he worked around "190" days—not over 200 days, and made around $5,000.00 for his work during that year; that based on his investigation plaintiff knew of no other employee doing the same class of work who worked over 200 days out of the year—they worked no more than he did, not over 190 days. The foregoing is substantially all the pertinent evidence tendered on the wage rate issues, and all of it came from the plaintiff. Appellant offered no evidence contradicting the foregoing testimony and tendered no records contradicting the testimony of claimant. Plaintiff contends in Point 5 that since plaintiff failed to discharge his burden of proof and obtain findings from the jury, that neither plaintiff nor another employee worked substantially the whole of the year preceding the alleged injuries; that plaintiff was not entitled to a recovery based upon the answer of the jury to Issue 18 as to an average weekly wage which would be fair and just. We overrule Points 1 to 5, inclusive, for reasons which we shall hereafter briefly enumerate. First of all, after the verdict appellant seasonably filed its motion for judgment on the verdict of the jury. We quote the pertinent parts of that motion: "That under the terms and provisions of the verdict of the jury the plaintiff should have and recover of and from the defendant Workmen's Compensation Insurance for a period of fourteen consecutive months from and after October 3, 1958, at the rate of $35.00 per week * * * that judgment should be entered in favor of the plaintiff and against the defendant for Workmen's Compensation Insurance at the rate of $35.00 per week * * *", and prayed that judgment be entered accordingly, and attached a copy of the judgment desired to be entered to the motion. (It is true that the Court denied this motion.) We are of the view that since appellant asked the Court in its motion to enter judgment in claimant's behalf at the maximum rate of $35.00 per week, that such affirmation on its part brings this contention under the harmless error Rules 434 and 503, Texas Rules of Civil Procedure. Appellant's motion for judgment in his favor on the verdict of the jury constituted an affirmation on its part that the claimant in this case is entitled to the maximum wage rate of $35.00 for his compensation. See Jones Fine Bread v. Cook, Tex.Civ.App., 154 S.W.2d 889, Points 2 and 3, and cases there cited (n.w.h). In other words, the motion filed by appellant in this behalf amounts to an admission, so surely the harmless error rule ought to be applied to a situation such as this. If appellant had filed such admission in the trial of the case before it was submitted to the jury there would have been no necessity to submit the wage rate issues to the jury. It follows that we are of the view that all of the alleged errors in appellant's brief relating to the calculation of the wage rate issues are harmless, and that each of them pass out of the case. In the second place the evidence of the claimant as to his wages and the time that he worked, although he is an interested witness, is not contradicted by any other witness or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies and circumstances tending to cast suspicion upon it, and this brings his testimony on the wage rate issues under the exception stated by our Supreme Court in Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904, Points 9 and 10. In the judgment we find this recital: "After the verdict of the jury and in due time and

form, plaintiff filed and presented to the court his motion for judgment." The transcript does not show any motion filed by the plaintiff for judgment. The Clerk at our request has furnished us with the original motion of claimant. It requests the Court to enter judgment on the verdict of the jury, the undisputed evidence, and stipulations of the parties. It does not ask the court to disregard the answers of the jury to any issues. (We think we should state that the trial court in its charge did not define what is meant by the term "substantially the whole of the year".) Appellant contends through Points 1 and 5 that there is no basis in the record upon which the court could render judgment for the maximum compensation (see Rule 301, T.R.C.P.) and says if any compensation under the verdict is applicable here it could only be the $9.00 minimum rate under Sec. 10, Art. 8306, R.C.S. We overrule these contentions for reasons which we have heretofore stated. We recognize that it was the duty of the claimant to comply with the above rule, and seasonably file his motion to disregard the answers of the jury to Issues 14 and 16 in order to reach Subsec. 3, Art. 8306, aforesaid; however, we are of the view that since appellant in its motion for judgment specifically asked that judgment should be entered at the maximum rate of $35.00 in claimant's behalf on the verdict that such affirmation on its part brings this matter under the harmless error rules, 434 and 503, T.R.C.P. It follows that Points 1 to 5, inclusive, and Point 12 are each overruled.

Appellant has briefed together his Points 6 through 11. They are substantially to the effect that the Court erred: (6) In overruling its objections to the Court's Charge as a whole; and to issues (7, 8 and 9) Because the Court failed to submit the ultimate issue of the extent of any loss of use of plaintiff's left arm; (7) There is no finding by the jury that plaintiff sustained any total loss of use of the left arm, and the Court erred in rendering judgment for total loss of use of the left arm; (8 and 9)

There is no evidence of probative force that plaintiff sustained total loss of the use of his left arm for a period of 28 months, and that the evidence is insufficient to sustain such finding; (10) That the court erred in submitting Issue No. 7, involving "a loss of the use" of the left arm accompanied by a definition of "loss of use" over defendant's timely objection that the definition did not define any term in the issue, was inconsistent therewith, and was confusing. That in the light of the definition accompanying Issue 7, the jury could refer at most to some degree of partial and not total loss of use, and the jury having failed to find the degree or percentage of any loss of use of the left arm, Special Issues 7, 8 and 9 provide no basis upon which plaintiff could recover. Plaintiff went to trial on his first amended petition. In this pleading he did not assert a claim for specific injuries, but relied upon a claim of general disability and sought total and permanent benefits. He alleged in effect that on October 3, 1958, while he was engaged in the performance of his duties for his employer, and in the scope thereof, he sustained severe accidental injuries to his left shoulder and left arm when a scaffold on which he was working slipped, causing him to fall; that a pipe which was helping to hold the scaffold in place struck plaintiff in his left armpit, and caused a severe tearing, wrenching and fracturing of the bones, muscles, nerves, ligaments, tendons and other vital tissues and organs of the left shoulder and arm; that plaintiff sustained immediate total incapacity for the performance of work as that term is defined in the Workmen's Compensation Law of the State of Texas, and within reasonable probability such total incapacity will last permanently. Plaintiff, by trial amendment, alleged that he sustained immediate loss of use of his left arm, which said loss of use has continued at all times down to the present date, and in reasonable probability, said loss of use will be permanent in duration and has been and will be total. He prayed for compensation for 200 weeks, for said loss

of the use of his left arm. The testimony in this record is voluminous. The Statement of Facts covers some 746 pages. We have given the testimony our most careful consideration, and we cannot summarize it without unduly extending this opinion, and besides, we do not believe it would be of any precedential value to do so. Suffice to say, we think it is ample to sustain the jury's answers to each of the issues complained of. Issue 7 was: "Do you find, from a preponderance of the evidence, that the injury, if any, sustained by plaintiff on the 3rd day of October, 1958, if any, has resulted or will result in a loss of the use of his left arm?", to which the jury answered "Yes". The court instructed the jury: "By the term 'loss of use' as used in this Charge, is meant that the member is so affected as to substantially and materially impair the use thereof, in the practical performance of its functions in the pursuit of a laboring man." Appellant in its objection to Special Issue 7 stated that such issue inquired "whether the loss of use of the arm is a loss of the complete use thereof", and further that such issue "indicates to the jury that the Court is inquiring whether the plaintiff has sustained or will sustain a total loss of the use of the left arm." Appellant in its amended motion for new trial repeatedly referred to Issue No. 7, as calling upon the jury to determine whether plaintiff had sustained or would sustain a total loss of the use of his left arm. We think Issue 7 was submitted substantially in the language of the Statute, which provides that the "permanent loss of the use" of the arm "shall be equivalent to and draw the same compensation as the loss of that member." See Art. 8306, Sec. 12. Issue 7 submitted the inquiry whether the plaintiff's injury resulted in total loss of the use of the arm. We think the language of the issue according to common usage submits such inquiry and would be so understood by the jury, and that it did not mislead the jury. See Traders and General Ins. Co. v. Porter, Tex.Civ.App., 124 S.W.2d 900 (w. ref.). Since the Court did not define or undertake to define the issue "loss of use" or "total loss of use", the burden rested upon appellant, if it desired a definition of such phrase, to prepare and tender a substantially correct definition, which it elected not to do. See Rule 279 and cases there cited. As we have above indicated, we think the evidence is sufficient to support the finding of the jury that plaintiff suffered a total loss of the use of his left arm for 28 months. It is true that the evidence shows that he resumed his work as a welder a number of months after the injury, and did his work well, but with great difficulty, and testified that he worked because of economic necessity, and that the use of his left arm and hand caused him severe pain. As to the probability of the use of his arm causing him pain, he was corroborated not only by the nature of the injury and the condition of the arm and hand and the muscles thereof, but by the testimony of Dr. Beall that it would do so, and by the testimony of Dr. Warren that the type of injury was one that was calculated to cause severe pain in the arm and shoulder and that if using the left arm caused severe pain he would not recommend that he use it. It is true that there is no contention that the arm was completely useless, and that he could not do anything with it at all; there were some things he could not do at all; that the loss of the use of his arm was occasioned in the main by the fact that any use of it caused him to suffer pain. The factor producing total loss of use was not physical inability to use the arm at all, but on the contrary, the practical factor that use or attempted use of it caused him to suffer pain. It is true that Holt used his left arm to some extent, and in doing so, made as much or more money as before his injury is evidentiary only. The testimony along this line raised only a fact issue for the jury who were yet privileged to credit Holt's testimony that the use of his arm caused him to suffer pain and that perforce of the pain occasioned by the use or attempted use of it he suffered the total loss of the use of his arm. Accordingly,

we overrule Points 6 through 11. See Choate v. American Motorist Ins. Co., Tex. Civ.App., 323 S.W.2d 188; Muro v. Houston Fire & Cas. Co., Tex.Civ.App., 310 S.W.2d 420 (n. r. e.); Associated Indemnity Corp. v. Potts, 5 Cir., 164 F.2d 1002; Penn. Threshermen and Farmers Mut. Cas. Co. v. Gloff, 5 Cir., 238 F.2d 839; Great Amer. Ind. Co. v. Segal, 5 Cir., 229 F.2d 845; Traders and Gen. Ins. v. Heath, Tex. Civ.App., 197 S.W.2d 130.

■ The 13th Point is to the effect that the Court erred in refusing to submit appellant's requested Charge No. 4, which was: "Do you find from a preponderance of the evidence that plaintiff's injury resulted from an altercation between him and Shirley Patterson at Center, Texas, on October 4, 1958?" The defendant plead "Defendant further alleges that such injury and disability as plaintiff may now have or did have after October 3, 1958, was and is caused and resulted from an altercation which occurred between the plaintiff and Shirley Patterson at Center, Texas, on or about October 4, 1958. The true defensive issue was whether plaintiff's injury and disability resulted solely from the altercation of October 4, 1958. Defendant's pleading did not allege that the altercation of October 4, 1958, was the sole cause of plaintiff's injury and disability, nor did its requested Issue No. 4 inquire whether plaintiff's injury resulted solely from the altercation." It is obvious that there is no merit in this contention. See Commercial Standard Ins. Co. v. Noack (Tex.Com.App.), 62 S.W.2d 72; Guzman v. Maryland Cas. Co., 130 Tex. 62, 107 S.W.2d 356; Armour & Co. v. Tomlin (Tex.Com.App.), 60 S.W.2d 204; Southern Underwriters v. Parker, Tex.Civ.App., 129 S.W.2d 738; City of Pt. Arthur v. Wallace, 141 Tex. 201, 171 S.W. 2d 480.

Appellant's Point 14 is substantially that the Court erred in failing to grant a new trial because of the highly inflammatory and prejudicial statement made by plaintiff's counsel in his closing argument to the jury wherein he accused defendant and its counsel of bringing in immaterial evidence to mislead the jury as a part of a determined, premeditated scheme to starve plaintiff to death when he got hurt on the job. The argument complained of is as follows: "Mr. Holt was asked by his general superintendent to go over to a testing laboratory and make a weld, and counsel brings out that statement where it says it was stretched and pulled—this pipe he made—in order to get the certificate of a certified welder, and then I asked the witness, 'does that have anything to do with the man's ability, physical ability, to work?' 'no, sir, all it does is make a weld.' They wanted to bring that in here and even had the men bring it up here, and 'do you have it there before you?' 'yes, I have it.' *That's the kind of testimony that they are bringing before you. Something to confuse you, mislead you. It is part of the scheme from the beginning as I said. It is part of that determined, premeditated scheme. When a man gets hurt out there, starve him to death, starve him to death."* (Emphasis added.) Defendant made no objection to the argument when made. The claimant testified in part:

"Q. All right. Now, when you signed this claim dated December 8, 1958, as a result of which you received $28.-00, you certified then that, 'I did not receive nor were there (nor are there now) accruing to me any disability benefits under the Workmen's Compensation Law of any State or any similar law of the United States.' That was on the back of that form, wasn't it? A. I hadn't received anything from anybody, either.

"Q. And you said further there was nothing accruing to you, didn't you? A. According to Mr. Anderson, there wasn't. He told me that he would starve me to death, that I wasn't going to get any unemployment compensation.

"Q. Unemployment or Workmen's Compensation? Now, what are you

talking about? A. Workmen's Compensation.

"Q. Mr. Anderson didn't have anything to do with this, did he? A. He didn't have anything to do with that, no."

There was no objection to the foregoing testimony, and there is no explanation as to the person referred to by plaintiff as Mr. Anderson, and no motion was made to strike the foregoing testimony.

In Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596, 599, we find this statement: "Before a judgment is reversed because of argument of counsel two things must appear: the argument must be improper, and it must be such as to satisfy the reviewing court that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." In Condra Funeral Home v. Mary Rollin, 158 Tex. 478, 314 S.W.2d 277, 280, our Supreme Court made this statement of the Rule:

"Under Rules 434 and 503, Texas Rules of Civil Procedure, appellate courts are directed not to reverse a trial court judgment for errors of law committed during the course of the trial of a case unless the error complained of 'amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case.' In enforcing those Rules we have held with respect to many and various types of errors that a reversal may be ordered only when a review of 'the whole record' convinces the reviewing court that but for the error a different verdict or judgment would probably have been rendered."

We think that the impact of the argument under the record as a whole was rather remote. First of all, the argument could not have had any effect on the wage rate issue, nor do we think it could have had any prejudicial effect on the amount of the time fixed for disability. See Mrs. Baird's Bread Co. v. Hearn, 157 Tex. 159, 300 S.W.2d 646. See also Wade v. Texas Employers' Ins. Ass'n, 150 Tex. 557, 244 S.W.2d 197. A careful examination of the whole record does not convince us that the argument of counsel probably resulted in an improper judgment. Accordingly, the judgment of the trial court is affirmed.