The **HOME INSURANCE COMPANY,**
Appellant,

v.

**T. J. GREENE, Appellee.**

No. 7930.

Court of Civil Appeals of Texas.

Texarkana.

June 17, 1969.

Rehearing Denied July 15, 1969.

Robert Lee Guthrie, Johnson, Guthrie, White & Stanfield, Dallas, Otto A. Ritter, Longview, for appellant.

Jones, Jones & Baldwin, Ray & Kirkpatrick, Thomas Y. Abney, Sam B. Hall, Jr., Marshall, for appellee.

CHADICK, Chief Justice.

T. J. Greene sued The Home Insurance Company to recover the value of windstorm damage to property claimed to be due under the terms of an insurance contract. Marshall Federal Savings & Loan Association intervened and sued both T. J. Greene and The Home Insurance Company, alleging that Greene was indebted to it, and that the indebtedness was secured by a deed of trust lien on the windstorm damaged property, and claiming a right to recover the amount of the indebtedness under the terms of the insurance contract mentioned. Hester Jean Keasler, Executrix of the estate of Ray N. Keasler, deceased, also intervened and alleged an action against T. J. Greene for material and labor furnished and performed in repairing windstorm damage to the Greene property, her prayer was that the sum of her claim be awarded to her and deducted from any recovery had by T. J. Greene.

After jury verdict on special issues a judgment was rendered and entered in the trial court on December 21, 1967, that T. J. Greene recover $18,750.00 from The Home Insurance Company, and that Hester Jean Keasler, Independent Executrix of the Estate of Ray N. Keasler, deceased, take nothing by her suit. Over five months later, on June 4, 1968, following appropriate notice, the trial judge, pursuant to Greene's motion to amend the judgment nunc pro tunc, entered a judgment reciting: "* * * it is the opinion of the court and the court so finds all issues of fact resolved in favor of the plaintiff and intervenor, Marshall Federal Savings & Loan Association, and it is, therefore, Ordered, Adjudged and Decreed by the Court that the Intervenor, Marshall Federal Savings & Loan Association, and the plaintiffs, T. J. Greene, recover of and from the defendant the sum of $18,750.00", and provided that the plaintiff recover costs of suit, interest, etc. Then finally, following appropriate notice, a hearing was held on the 6th day of December, 1968, and a third judgment, bearing such date, was entered. This last judgment decreed that Hester Jean Keasler, Independent Executrix of the Estate of Ray N. Keasler, deceased, take nothing, and awarded intervenor, Marshall Federal Savings & Loan Association and T. J. Greene a joint recovery of $18,500.00 from the insurance company.

On the occasion of December 6, 1968, nunc pro tunc judgment hearing the court approved a bill of exception which recited that no evidence was permitted or received in any proceeding between the parties after the date of the judgment originally entered December 21, 1967; this is borne out by the record on file. However, the bill of exception was qualified with this statement: "The judgment herein entered nunc pro tunc is entered purely in the nature of correcting a clerical error and misadvertent oversight of the court in the omission of the party, intervenor, Hester Jean Keasler, Independent Executrix of the Estate of Ray N. Keasler and such judgment is entered to comply with the jury finding and evidence presented during the trial of the case, which correction being purely of a clerical error." Reference to the pleadings in the record shows that Marshall Federal Savings & Loan Association alleged a cause of action against both T. J. Greene and The Home Insurance Company, and prayed for judgment against both in the sum of $15,978.20, with interest, etc., to be applied as a credit on T. J. Greene's note payable to the loan association. Notwithstanding this pleading and proof in support of it, the record shows that both the second and third judgments entered did not expressly mention or dispose of the suit of Marshall Federal Savings & Loan Association against T. J. Greene.

The Home Insurance Company filed a motion for new trial after each judgment was entered, and in each instance such motion was overruled and an appeal perfected therefrom. At the direction of The Home Insurance Company the appeal from the third and last judgment was lodged in this court and docketed as a separate case under docket number 7949. For the purpose of argument and submission, Cause No. 7930, the appeal from the original judgment, and No. 7949 were ordered consolidated by this court.

This court has reached the conclusion that the first judgment rendered, that dated December 21, 1967, expressly and by necessary implication adjudicated and disposed of all issues and the rights of all parties to the action, and that the two nunc pro tunc judgments thereafter entered are nullities. In reaching this conclusion, appellant's points of error 1 and 2 are overruled, and 3, 4, and 5 are sustained. The effort so far has been to summarize the record as it pertains to the conclusions stated. The basis of the conclusion and authority supporting it will be briefly discussed.

■ A judgment rendered after trial on the merits, in which the parties have endeavored to support pleadings with evidence will, by implication, in the absence of an expressed disposition, dispose of all parties and issues before it and is final for appeal purposes on the presumption "that the court intended to, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties". North East Independent School District v. Aldridge, 400 S.W.2d 893 (Tex. 1966). Excepted from the rule are situations corresponding to that found in Davis v. McCray Refrigerator Sales Corporation, 136 Tex. 296, 150 S.W.2d 377 (1941). On the general subject see: 4 McDonalds Texas Civil Practice, Judgments, § 17.10; Roedenbeck Farms v. Broussard, 133 Tex. 126, 127 S.W.2d 168 (1939); Whitmire v. Powell, 103 Tex. 232, 125 S.W. 889 (1910); Southern Pacific Co. v. Ulmer, 286 S.W. 193 (Tex.Com.App. 1926); Gamble v. Ban-

neyer, 137 Tex. 7, 151 S.W.2d 586 (1941).; Vance v. Wilson, 382 S.W.2d 107 (Tex. 1964).

■ This appeal was preceded by trial on the merits in which each party undertook to support pleadings with evidence in a jury trial. As previously set out, the first judgment entered, that of December 21, 1967, expressly disposed of the parties Hester Jean Keasler, T. J. Greene and The Home Insurance Company, and the issues raised by their pleadings and evidence. The judgment omitted any mention of Marshall Federal Savings & Loan Association, but expressly adjudicated and disposed of the total amount recoverable under the insurance contract, without hint of limitation or qualification. The positively expressed disposition of the total insurance money and the absence in the written memoranda of judgment of a subsequent qualification of the award first made necessarily implied that the relief sought by Marshall Federal Savings & Loan Association was denied. This implication is not dissipated by the circumstance that the Marshall Federal Savings & Loan Association might have been entitled to a judgment as a matter of law. It may be conjectured that the trial judge intended to award the savings and loan association a judgment, or that he overlooked the import of the undisputed evidence, or misinterpreted it; regardless of an aberration in this respect, expressed adjudications and the implications necessarily drawn from the award of the entire sum of the insurance money to T. J. Greene evoked the presumption of finality.

■ Nothing in the appeal record shows the trial judge pronounced or rendered judgment on December 21, 1967, in anywise different from the written memorial thereof signed and entered on that date. The original judgment is final. It disposed of all parties and all issues. Plenary power of the district court to alter or change the judgment terminated thirty days after Home Insurance Company's motion for

new trial was overruled on March 21, 1969. Tex.R.Civ.P. 329b. Consequently, the purported nunc pro tunc judgments are nullities as they constituted an effort to record a neoteric decision after the court had lost jurisdiction to alter or change its judgment. See Coleman v. Zapp, 105 Tex. 491, 151 S.W. 1040 (1912); Williams v. Pitts, 151 Tex. 408, 251 S.W.2d 148 (1952).

▄ Marshall Federal Savings & Loan Association and T. J. Greene filed a joint motion in which the savings institution disclaimed any right of recovery in this case, and joined T. J. Greene in moving this court to modify the judgment. The motion entreats this court to enter judgment that Marshall Federal Savings & Loan Association take nothing in this action and that Home Insurance Company recover costs to that extent. The motion also stated that the savings institution and T. J. Greene had compromised all issues theretofore existing between them and attached as an exhibit a copy of a partial assignment of judgment. The assignment transferred $15,385.78 to Marshall Federal Savings & Loan Association out of the judgment T. J. Greene recovered from The Home Insurance Company. Objection to the requested modification of the judgment by this court was lodged by Home Insurance Company. The insurance company's objection is sustained. In Freeman on Judgments, § 1051 it is said: "Judgments, like other choses in action, can not be assigned in part without the assent of the debtors for the reason that entire demands can not, against their objections, be split for the purpose of annoying defendants. Such an assignment, however, is recognized and enforced in equity and is effective as between the parties to it. * * *." The assignment will be disregarded in this appeal.

The action of the trial court in overruling appellant's motion for an instructed verdict because the proof of loss provisions of the policy were not complied with is the subject of appellant's point of error No. 10. Such provisions are as follows:

"Within 91 days from date of such loss the insured shall file with the Company or its agent a Proof of Loss sworn to by the Insured. Such Proof of Loss shall reveal to the best knowledge and belief of the Insured the following: the time and cause of the loss; the interest of the Insured and all others in the property, including any encumbrances thereon; of contracts of insurance, whether valid or not, covering such property; the actual cash value of each item of property and the amount of loss thereto and, if the Insured elects to make claim under the Replacement Cost Coverage of the policy, the replacement cost of the described dwelling, the replacement cost of any building upon which loss is claimed, and the full cost of repair or replacement of loss without deduction for depreciation."

Greene's dwelling is separately described and its location given on the face of the policy. There follows on the first page of the instrument a list of the coverages afforded and the limits of liability applicable to each. The coverages are itemized as follows: A. Dwelling; B. Unscheduled Personal Property; C. Scheduled Personal Property; D. Personal Liability; E. Personal Medical Payments; F. Physical Damage to Property of Others. Paragraph numbered 8 in the Proof of Loss filed by T. J. Greene stated: "The amount claimed under the above numbered policy is $18,-000.00 for loss to the dwelling, plus additional living expense plus damages to extensions." Elsewhere on the printed claim form he identified the policy subject to his claim and stated that the damage claimed was due to windstorm, that he occupied the dwelling as the legal owner, that Marshall Federal Savings & Loan Association had an interest in it, that the actual cash value of the dwelling at the time it was damaged was $22,500.00, that the whole loss and damage caused by the windstorm was $23,500.00.

▄ Substantial compliance with the requirements of the proof of loss provi-

sion is all that is required. 32 Tex.Jur. Insurance § 372, p. 577; Travelers Insurance Company v. Cadena, 91 S.W.2d 1112 (Tex.Civ.App. San Antonio, 1936, writ dismissed); Connecticut General Life Ins. Co. v. Williams, 87 S.W.2d 807 (Tex.Civ. App. Beaumont, 1935, no writ). Greene's proof of loss substantially complies with the policy requirements. The policy itself lists the dwelling house as a separate unit or item afforded coverage by the policy. Greene's obligation was to show the actual cash value of each item of property and the amount of damage thereto. The policy treated the dwelling house as a separate item, and it would be logical that Greene do the same in filing his proof of loss. The insurance company was apprized that a claim was made for $1,000.00 for additional living expense and damage to extensions. Additional living expense is not an item of property required to be itemized in the proof of loss. What was meant by damages to extensions is obscure, but in any event the record does not show a claim for or recovery of damages was allowed under that designation. The point of error must be overruled.

Appellant's point of error No. 11 is sustained, and points 12, 13 and 14 are overruled. The effect of sustaining point No. 11 will be noticed hereafter. The next 30 points of error (15 through 45) require a review of various aspects of the jury argument made by Greene's counsel. An extended discussion of each point is not feasible, but certain phases of the argument justifies separate examination and comment, though it causes the opinion to be extended beyond a desirable length.

The following excerpt is from closing argument made by counsel for Greene, together with the objection thereto and the colloquy that ensured, to-wit:

"I regret very much that this case has degraded into what it has by the innuendos, the insinuations, the accusations that Mr. Greene, his wife, Jack Harmon, Bill Huffman, and yes, even Reverend Harris would play a part in coming before

this jury to present a grand scheme of fraud—

"MR. RITTER: Your Honor, I have listened to this word three times, now the first time I heard it in this courtroom was by Franklin Jones, I want to object to it, it is inflammatory, and there is no accusation on the part of anyone, I don't want to have to rise and object any more, but I don't intend to sit here and let it go unnoticed, and I object to it, and move the court to instruct counsel to refrain from making any such statements in his closing argument. We would like to have a ruling of the court on our exceptions to the argument.

"THE COURT: I overrule your objection.

"MR. RITTER: Note our exception.

"MR. BALDWIN: They haven't said it, they don't quite get that far; what they want is for you to say it, they want you to wash their dirty linen by your verdict."

It is to be noted that the objection did not specify fraud as the word giving offence and to which objection was made, and that the relief asked by the insurance company's counsel was that the court instruct Greene's counsel not to make "such statements in his closing argument". The word or epithet "fraud" was not used thereafter. In the opening argument, when another of Greene's lawyers was speaking, the statement of fact records this occurrence:

"* * * Whether or not those cracks, and all of these conditions in this house existed before this wind came out there that night, is something that is capable of being proved; it is something that we were capable of bringing you evidence to bear on, and it is something that these Johnny's over here that are calling this man and his wife frauds here today, could have brought you testimony on, and they didn't have to go without it.

"MR. RITTER: Your Honor, we object to the inflammatory argument made by counsel; my name is not John, and I resent being called Johnny, and I move for a mistrial, due to the inflammatory argument of counsel.

"THE COURT: I overrule your objection.

"MR. RITTER: Note our exception.

"MR. JONES: Come in here Monday morning and tell you jurors, that this man is here today, trying to make this Insurance Company pay for loss that he knows wasn't caused by windstorm—now, if that's not fraud, I don't know what it is. That's what they are here telling you. And to back up that kind of slander toward this man, they bring you this guy from Dallas, who I want to talk about here in a minute. * * *"

The insurance company's position under its pleading and proof, as well as its argument to the jury, was that Greene's windstorm damage had been fully repaired, at the insurer's cost, by Ray N. Keasler. But that in addition to having a completely restored house, Greene wanted the jury to give him $18,750.00. In support of that defense the insurance company offered evidence to show that defects in the house, existing after the Keasler's repairs were made, were not the result of windstorm damage. Insurance counsel charged and argued that Greene and his counsel distorted and twisted the facts to try to make it appear that defects caused by improper workmanship and foundation subsidence were windstorm damage, when they knew such defects predated the windstorm.

In City of Dallas v. Andrews, 149 Tex. 609, 236 S.W.2d 609 (1951), it is said: "Counsel for litigants have the right to argue the issues raised by the evidence and the pleadings. The duty rests upon the trial court to supervise the scope of the argument of counsel, and to limit argument to the evidence and to the argument of opposing counsel." Judge Garwood in Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115 (1951), held it to be inflammatory for plaintiff's counsel to argue that the effect of defendant counsel's argument was to characterize the plaintiff as a liar, fraud, faker, or cheat, when such epithets had not been used by defendant's counsel in the course of permissible argument on the facts. In this instance, insurance counsel's argument was unchallenged by formal objection, and presumptively was within permissible bounds. Southwestern Greyhound Lines v. Dickson would require the conclusion that the argument was improper and inflammatory.

■ Another phase of the argument made in Greene's behalf that arouses especial concern is the following, to-wit:

"They are talking about the Insurance Company, and what insurance there is that Mr. Greene couldn't afford to pay this loss, do you think the Insurance Company can afford it? Do you think they are losing business, losing money in business? I had rather stack up what they made last year than what Mr. Greene made."

In cross-examining one of the insurance company's expert witnesses, it was developed that the insurance company had paid him $50,000.00 in a five months period. Insurance counsel wondered aloud in his closing argument how the $50,000.00 would compare with the fees Greene's lawyers would earn in five months suing insurance companies. Thereafter, he argued that purpose of insurance was to spread the risk incident to certain perils. He stated an individual could not afford to take the risk alone, saying that Greene's family could not afford to pay a substantial loss, and implied that because of the spread the insurance company was able to do so. The argument of Greene's counsel in this context had a tendency to arouse the jury's interest in an immaterial circumstance, but insurer's counsel first called the seductive tune and can hardly complain when others joined in the dance.

The inquiry at this point is whether singly or in sum the improper elements of Greene's argument were calculated to and probably did cause the rendition of an improper judgment. Tex.R.Civ.P. 434. The problem here has been discussed many times in many cases. Seldom are two cases identical. Besides cases previously mentioned bearing upon the question, the following were cited and have been consulted: Benson v. Missouri K. & T. R. Co., 200 S.W.2d 233 (Tex.Civ.App., Dallas, 1946, writ ref. n. r. e.); Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 (1953); Texas Employers' Insurance Ass'n. v. Haywood, 153 Tex. 242, 266 S.W.2d 856 (1954); United States Fidelity & Guaranty Co. v. Lewis, 266 S.W.2d 194 (Tex.Civ.App.Texarkana, 1954, writ ref'd, n. r. e.); Southern Pacific Co. v. Hubbard, 156 Tex. 525, 297 S.W.2d 120 (1956); Condra Funeral Home v. Rollin, 158 Tex. 478, 314 S.W.2d 277 (1958); Dyer v. Hardin, 323 S.W.2d 119 (Tex.Civ.App., Amarillo, 1959, writ ref., n. r. e.); Travelers Insurance Co. v. Broadnax, 365 S.W.2d 683 (Tex.Civ.App.Texarkana, 1963, writ ref'd, n. r. e.); Howsley & Jacobs v. Kendall, 376 S.W.2d 562 (Tex.1964). Also helpful is a commentary, cited by the appellant, in Volume 2, Vernon's Texas Rules of Civil Procedure, p. 507, pertaining to errors in jury argument.

The harm in much of the argument could have been cured if timely objection had been made and proper instruction given. Though some of the argument would have been prejudicial under any circumstance. In opening the argument for the defense, a major and recurring theme was sounded that plaintiffs all over Texas tried to prejudice juries against insurance companies and by implication the jury was being subjected to such an effort. On more than one occasion the plaintiff and/or his lawyers were accused of spreading venom; it was twice charged that they talked out of both sides of their mouth, repeatedly it was asserted that they twisted and distorted the evidence; that the plaintiff wanted his house repaired and the insurance money too. On the other hand, Greene's counsel overlooked few, if any, opportunities to emphasize that appellant's counsel was from Dallas. This fact was mentioned, perhaps shouted twelve times, though the jury was aware of the circumstances from the time of selection. Also, the fact that certain witnesses were from Dallas, or at least not residents of Harrison County, and that the plaintiff was a local Harrison County man was constantly emphasized. The impression was left with the jury that a verdict against Greene would cloud his reputation. A further catalogue of improper argument will serve little purpose.

The obvious hyperbole, the exaggerated and overdone statements in the argument of Greene's counsel, was probably discounted by the jury as "lawyer talk", and the evidence in the case considered on its merits. On balance it can not be said that any one of the several phases of the improper argument, or all of them considered together, caused the rendition of an improper judgment. See Lumbermen's Lloyds v. Loper, 153 Tex. 404, 269 S.W.2d 367 (1954).

All of the appellant's points of error have been carefully examined and it is concluded that error requiring reversal of the entire case is not shown. However, because point of error No. 11 was sustained, it becomes necessary to modify the judgment of the trial court by a reversal in part and deleting therefrom a recovery of $750.00 awarded Greene as additional expense payable under the terms of the policy. Costs are taxed four-fifths against The Home Insurance Company and one-fifth against T. J. Greene. Causes No. 7930 and 7949 are consolidated for all purposes, the consolidated records will hereafter bear the number 7930. It is ordered that judgment be entered accordingly.

DAVIS, J., not participating.