**Irma Z. RODRIGUEZ, Appellant,**

v.

**LIBERTY MUTUAL INSURANCE CO., Appellee.**

**No. 15976.**

Court of Civil Appeals of Texas, San Antonio.

April 5, 1978.

Rehearing Denied May 3, 1978.

Jerald Abrams, Knickerbocker, Abrams & Cowan, Eagle Pass, for appellant.

David B. Person, Brock, Bingham & Person, San Antonio, for appellee.

MURRAY, Justice.

This is a worker's compensation case filed by Irma Z. Rodriguez, an employee of Williamson-Dickey Manufacturing Company, against Liberty Mutual Insurance Company, the worker's compensation insurance carrier for the manufacturing company, seeking compensation benefits for an injury alleged to have been sustained on July 21, 1975, while on the job.

Trial was before jury. At the conclusion of the evidence, the trial court submitted its charge to the jury and in response to Question No. 1, to wit: "Did the plaintiff receive

an injury on or about July 21, 1975?", the jury answered no. The court, in its charge, found injury as "damage or harm to the physical structure of the body as such diseases or infection as naturally result therefrom, or the incitement, acceleration, or aggravation of any disease, infirmity, or condition, previously or subsequently existing, by reason of such damage or harm." The principal question to be decided is whether the jury's answer to Question No. 1 is so against the great weight and preponderance of the evidence as to be manifestly unjust.

Prior to July 21, 1975, plaintiff had worked some eight to ten years as a presser with the Williamson-Dickey Manufacturing Company and had missed some time from work in 1974 because of a back condition but had returned to work in November of that year and had worked continuously until the morning of July 21, 1975.

■ Plaintiff's complaint that the jury's answer to Special Issue No. 1 is against the great weight and preponderance of the evidence must be decided by us under the rules laid down by our Supreme Court in *In Re King's Estate*, 244 S.W.2d 660 (Tex.1951), wherein that court spelled out in the following language the proper guide where the great weight and preponderance of the evidence question is raised:

The question requires the Court of Civil Appeals, in the exercise of its peculiar powers under the Constitution and Texas Rules of Civil Procedure Nos. 451, 453, and 455, to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust—this, regardless of whether the record contains some 'evidence of probative force' in support of the verdict.

Plaintiff, Mrs. Rodriguez, testified that she had been working as a presser for the Williamson-Dickey Manufacturing Company and that on July 21, 1975, at approximately 10:00 or 10:30 a. m., while picking up a pair of pants to be pressed, she felt a great pain in her neck; that she called for her supervisor, Mrs. Morin, who came to her aid; that she told Mrs. Daniel that she had such a strong pain that she couldn't see her; that Mrs. Morin took plaintiff to the first aid room and applied some alcohol to her neck and thereafter took her home; that the pain was so great that she called her husband who took her to the hospital; that Dr. De Hoyos treated her and gave her some pills and an injection for the pain; that she returned to Dr. De Hoyos who gave her a paper showing that she could not work; that she went to Dr. Simmons who prescribed pills for the pain and some kind of apparatus for the neck.

Natividad Cruz Pola, an employee of the company, testified that she saw plaintiff pick up a pair of pants and place them on the press, and when she pulled them to straighten them out she said "It hurts. It hurts." On cross-examination, Mrs. Pola was asked whether she remembered an interview in Mrs. Daniel's office on December 17, 1975, whereby she denied seeing the incident. Mrs. Pola answered "I don't remember."

Portions of the deposition testimony of Dr. De Hoyos, who initially treated plaintiff at the Maverick County Hospital, were read which showed that plaintiff complained of a severe headache, and also pain in her neck, especially to lateral movement to the head; that an examination revealed a muscle spasm in her neck; that in his opinion the muscle spasm could have been caused by an injury, or just the position of the neck, the sustained position of the neck, it could have been at work or at home; that plaintiff gave no indication or history that she had sustained an on-the-job injury; that there was no indication in the emergency room as to an on-the-job injury.

Plaintiff's written interrogatories answered by Dr. Arturo Batres showed that no written history of Mrs. Rodriguez was recorded; that in his opinion the diagnosis of plaintiff's physical condition was a cervical strain and two chronic lumbo-sacral strains.

Maria Daniel, the plant manager of the company, testified that on the morning of the incident plaintiff was crying and indicated that she wasn't feeling well; that her neck hurt and that she hadn't slept very well the night before, that her daughter had a baby and she was very worried; that she wanted to see her doctor, and if she rested maybe she could come in after lunch or the next day; that plaintiff did not relate that she had received any injury as a result of an on-the-job accident or anything connected with her work.

Magdelina Morin, the inspection floor lady of the company, testified that on July 21, she took plaintiff to the first aid room and put some alcohol with paper towels on her neck; that she took plaintiff home when she indicated that she couldn't work; that after the incident Mrs. Morin made a memo of the conversation with plaintiff, which states in part:

I asked her what was wrong, and she said she just couldn't move her neck, that it hurt. I took her home, and on the way I asked her how she was feeling, and she said that the night before she had spent most of the night in the hospital with her daughter who was having a baby, but she never complained of hurting herself at work.

Mr. Ronald Tupper, the hospital administrator, testified that the hospital records indicated that plaintiff reported the claim on the health and medical insurance coverage of the plant.

The defendant offered the deposition testimony of Dr. Pedro Quiroga, a San Antonio orthopedic surgeon who treated plaintiff on or near January 20, 1976; and that plaintiff complained of low back pains on the information form that was filled out; that the history related on her examination was that on July 21, 1975, she pulled up on a pair of pants while at work, and felt an acute pain in her neck; that in her history, she stated that she was seen by Dr. Simmons and she was told that she had arthritis of her neck; and that in Dr. Quiroga's opinion the diagnosis of plaintiff's condition is arthritis of her neck and low back and that her accident may have contributed to aggravate the arthritis.

When all the evidence, both favorable and contrary to the verdict is considered, we cannot say that the verdict is contrary to the great weight and preponderance thereof. We therefore hold that the testimony favorable to plaintiff, when considered in connection with all other evidence, is insufficient for us to hold that the verdict of the jury is so against the great weight and preponderance of the evidence as to be completely wrong and unjust.

█ Plaintiff next complains of the action of the trial court in failing to grant a new trial grounded on the violation by defense counsel of a motion in limine requiring him to not refer to or make mention of the fact that plaintiff had any preexisting or prior bodily ailments, condition, or diseases, with the exception of testimony of any prior back condition, without first approaching the Bench and obtaining a ruling from the court outside the presence and outside the hearing of the jurors in this case.

The purpose of a motion in limine is to point out to the trial judge certain evidentiary rulings that he may be called upon to make during the trial. It is not a ruling on evidence. Orders granting or denying a motion in limine do not preserve error unless evidence is offered during the trial. Error is preserved by a proper objection if the evidence is offered before the jury and the court overrules the objection, or by a proper bill of exception if the judge excludes the evidence. *Biard Oil Co. v. St. Louis Southwestern Ry. Co.*, 522 S.W.2d 588 (Tex.Civ.App.—Tyler 1975, no writ); *Redding v. Ferguson*, 501 S.W.2d 717 (Tex.Civ. App.—Fort Worth 1973, writ ref'd n. r. e.).

The defendant offered deposition testimony of Dr. Pedro Quiroga, a San Antonio orthopedic surgeon who stated that he had taken X-rays of plaintiff's cervical or neck area and was then asked what these X-rays indicated. The following then took place in open court:

MR. ABRAMS: Your Honor, may I approach the Bench?

THE COURT: What's the objection?

MR. ABRAMS: I would like to make my objection to the Court Reporter out of the presence of the jury.

THE COURT: Let's state our objection. Does this have to do with the production of the X-rays?

MR. ABRAMS: It has to do with the following testimony.

THE COURT: Well, just state your objection, Mr. Abrams.

MR. ABRAMS: Your honor, we have a motion before the court. We have rulings of the court that are being violated right and left.

THE COURT: Overruled. Go ahead.

MR. ABRAMS: I would like to make it clear for the record, that the court has denied me permission to approach the Bench and make my objection.

THE COURT: All right, so ruled. Let's go ahead. Let's proceed.

At this point, it was apparent that the court considered the following deposition testimony as not in violation of his pretrial order or that he considered the testimony admissible. The attorney for plaintiff made no further objections and the defendant then proceeded to read into evidence from Dr. Quiroga's deposition that he had diagnosed a condition of cervical arthritis which was a normal part of aging. In the absence of a proper objection by the plaintiff, any error of the trial court is not preserved for review. *Hartford Accident and Indemnity Co. v. McCardell*, 369 S.W.2d 331 (Tex.1963); *Johnson v. Reed*, 464 S.W.2d 689 (Tex.Civ.App.—Dallas 1971, writ ref'd n. r. e.).

While we believe that plaintiff's failure to properly object to osteoarthritis is determinative of the point, there is yet another reason why the point cannot be sustained. Before a judgment may be reversed because of the admission of improper testimony the record as a whole must show that the improper testimony was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Tex.R.Civ.P. 434 (1978); *Condra Funeral Home v. Rollin*, 314 S.W.2d 277 (Tex.

1958); *Aultman v. Dallas Ry. & Terminal Co.*, 260 S.W.2d 596 (Tex.1953). After a review of the record as a whole, we do not believe the error, if any, was reasonably calculated to cause and probably did cause an improper judgment. The judgment of the trial court is affirmed.

CADENA, Chief Justice, concurring in result.

I concur in the result. In her brief, appellant merely argues that it is "conceivable" that Dr. Quiroga's testimony "could have allowed the jury to speculate that it was an arthritic condition and not an on-the-job accident that caused her sudden pain on" the date of the alleged injury. A contention that a ruling of the trial court "conceivably" resulted in rendition of an improper judgment falls far short of satisfying the requirement, as a condition precedent to reversal, that the alleged error probably caused rendition of an improper judgment.